## Indian Creek Coal Company v. Walcott.

(Decided February 17, 1916.)

## Appeal from McCreary Circuit Court.

1. Master and Servant—Personal Injuries—Evidence—Peremptory Instruction.—Evidence examined and the action of the trial court in overruling defendant's motion for a peremptory instruction held to be error, because the evidence showed affirmatively that plaintiff, at the time of the accident, was the superior and in immediate control of the men whose acts caused the injury.

2. Damages—Excessive Damages.—$10,000 damages held flagrantly excessive for fractures of one arm.

3. Evidence—X-Ray Photograph—Admissibility.—Admission of X-ray pictures as evidence is error, unless properly accredited, and such error is prejudicial unless the verdict is supported by the weight of the evidence.

TYE SILER & GATLIFF and O'REAR & WILLIAMS for appellant.

ROBERT HARDING, JOHN W. RAWLINGS and JOHN N. PERKINS for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

On August 26, 1912, appellee while working for appellant at its coal mine was injured by a shot of dynamite or powder fired for the purpose of loosening the coal. His arm was broken in four places, and upon the trial of the suit filed to recover for these injuries, he recovered a verdict and judgment for ten thousand ($10,000.00) dollars.

Appellant is seeking a reversal of that judgment for the following reasons:

1. The court erred in refusing it a peremptory instruction.

2. The damages are grossly excessive.

3. Admission of incompetent evidence for appellee.

1. Appellant contends that appellee at the time of the accident was foreman of the gang of men that fired the shot from which the accident resulted, and that these men in that work, and at the time, were under the immediate direction and supervision of appellee, and that appellant is therefore not liable to appellee for the injuries so received.

It is appellee's contention that at the time of the accident these men were not working under him, but were

under the direction and supervision of the bank boss, Ramsey, and that the company is liable to him for his injuries.

The men who fired this shot were engaged at the time in driving a new entry from the outside into the mine, and there were four men engaged in this work—Columbus King, Louis Strunk, Floyd Strunk and Him Dietz.

Appellee was electrical engineer for the mine, and in addition, for some time before this accident, at times, had been acting as civil engineer for the mine as well. A short time before this accident, and while acting as civil engineer, he had made a survey of the old entry in the mine, and from that survey had located for the company, under the direction of the general manager, J. C. Walker, this new entry, which was being driven into the mine, and he had set the stakes showing where and in what direction this entry was to be made. The entry had been nearly completed, and a day or two before the accident, Mr. Walker, superintendent of the mine, told appellee that it had been reported to him by the bank boss that this new entry was not going to strike the place in the mine desired, and that he had better check up his work to see if he had not made a mistake. At the time of the accident appellee was engaged in checking up his survey for this entry, and was measuring the stakes he had set in the old entry. He admits that until a few days before the accident he was the superior and in charge of the two Strunk boys and Dietz, and was in charge of them in driving this new entry until the vein of coal was struck. But it is his contention that when the coal was struck these men automatically passed from his control to the control of the bank boss, Ramsey. He admits that as civil engineer he had surveyed, mapped and staked this new entry, and started the men in the work of excavating the dirt and driving the entry, and erecting the necessary timbers to protect the opening. He does not even himself state that he had ever transferred or turned over this gang of men, or the work that they were doing, to the bank boss, Ramsey. He only states that so long as the work was outside work, he was in control of it, but when it became inside work, it was under the control of Ramsey, and he contends that because in driving the new entry the vein of coal had been reached and the coal was being saved for the company by the men doing the work, that that fact changed their work from outside work to

inside work, or mining, and that they thereby passed from his control to that of Ramsey. In this theory of his, he is not supported by any evidence whatever. While these men were saving the coal encountered in making this new entry, that clearly was merely incidental to the work they were engaged in, which was not mining, but was that of constructing a new entrance into the mine.

Appellee introduced the Strunk boys as witnesses for him, and they both testified that appellee employed them, directed them what to do, kept the time of this force of men, was there two or three times a day directing them in their work, and that at the time of the accident they were working under the immediate direction and supervision of appellee. Appellee admits that he employed these men, except King, and that he did keep their time and that he was in control of them in making this entry until they struck the coal vein, and he admits that at the time of the accident he was engaged in checking up his survey for this entry. Every bit of evidence introduced by appellee shows that these men who fired the shot were at the time engaged in driving the new entry; that he was in charge of the work of making this new entry; that these men were working by stakes set by him; that he kept the time and directed the work of these men. The only thing presented as indicating in any way that these men were not under his supervision at the time of the accident, is not evidence at all, but is simply his theory that because these men in driving the entry were saving the coal encountered, that they thereby passed from under his control to that of the bank boss.

In our judgment appellee's evidence not only did not show that these men were not under his control at the time of the accident, but as a matter of fact shows conclusively that he was their superior, and in charge of them at the time of the accident.

It results, therefore, that the court erred in overruling appellant's motion for a directed verdict in its favor, and having reached this conclusion it is unnecessary to discuss at length the other errors assigned; but in view of the fact that another trial may be had, we deem it necessary to state our conclusions without setting up the reasons therefor upon these other matters.

In our judgment the verdict in this case of ten thousand ($10,000.00) dollars damages for fractures to one arm was so flagrantly excessive as to furnish a ground

for reversal; and the X-ray photographs not having been properly accredited, it was error to admit them as evidence (Ligon v. Allen, 157 Ky., 101), and such an error as would necessitate a reversal if the verdict was not in accord with the weight of the evidence.

For the reasons indicated the judgment is reversed, and the cause remanded for a new trial consistent herewith.